# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **MARK HOLLIER** | * | **CIVIL ACTION NO. 04-2517** |
| **VERSUS** | * | **JUDGE MELANÇON** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993.  Mark Hollier, born September 25, 1966, filed applications for disability insurance benefits and supplemental security income on December 28, 1989, alleging disability as of March 1, 1987,[1] due to a lumbar spine fracture and problems with his feet.  The claim was denied.  Pursuant to a court order in the class action lawsuit of *Stieberger v. Sullivan*,[2] the case was reopened.  Another unfavorable decision was entered on September 25, 2001.  Claimant filed a request for hearing, which was held on October

---

[1]This was the date designated by the Administrative Law Judge ("ALJ").  (Tr. 17). However, the Disability Report Adult lists the onset date as September 1, 1986.  (Tr. 97).

[2]The district court's decisions on motions for summary judgment in this matter are reported at 615 F.Supp. 1315 (S.D.N.Y. 1985) and 738 F.Supp. 716 (S.D.N.Y. 1990).  The settlement agreement at issue is reported at 792 F.Supp. 1376 (S.D.N.Y. 1992) and modified in part at 801 F.Supp. 1079 (S.D.N.Y. 1992).  *See* HALLEX I-5-4-13 (Feb. 21, 1997) regarding the rules for the readjudication of *Stieberger v. Sullivan* class member claims.

10, 2002.  On January 16, 2003, ALJ Lawrence T. Ragona issued an unfavorable decision.

In the meantime, claimant filed a second application for benefits on March 13, 1991.  Ultimately, claimant was found disabled beginning December 7, 1989.  (Tr. 29-34).  On judicial review, claimant argues that he should be awarded benefits for the period September 1, 1986 through December 6, 1989.  (rec. doc. 10, p. 3).

<u>FINDINGS AND CONCLUSIONS</u>

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is not substantial evidence in the record to support the Commissioner's decision of non-disability. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions regarding claimant's disability is not supported by substantial evidence, based on the following:

**(1) <u>Records from Dr. J. Michael Kramer dated October 30, 1986 to January 30, 1990</u>**.  On October 30, 1986, Dr. Kramer reported that claimant had sustained a burst fracture to the lumbar spine in August, 1986 after a motorcycle accident.  (Tr. 148, 170-71).  He had been treated with bilateral pedicle plating, and was in a full body cast.  He was fitted with a brace on November 14, 1986.  (Tr. 170).

On December 5, 1986, Dr. Kramer reported that a CT scan showed significant retropulsion of a bony fragment into the spinal canal at L1, occluding approximately one-third or more of the canal. (Tr. 167). Claimant had continued to improve in motor power, but was still particularly weak in plantar flexion of the feet and eversion. Dr. Kramer referred claimant for physical therapy.

On April 4, 1987, claimant still had considerable weakness in the gastrocnemis complex. (Tr. 161). He still required dulcolax every two days to achieve bowel movements. The CT scan at L1 still demonstrated approximately 50 percent canal occlusion.

On May 18, 1987, claimant was admitted for anterior decompression of L1. (Tr. 148). His strength in plantar flexion was excellent postoperatively, and improved throughout his hospital stay. (Tr. 149). He was started on physical therapy.

On June 30, 1987, Dr. Kramer reported that claimant's strength in his gastrocs and hamstrings had continued to improve according to his physical therapist. (Tr. 147). Dr. Kramer encouraged claimant to continue exercising at home.

On September 18, 1987, Dr. Kramer wrote that claimant was capable of working full-time with no heavy lifting, no excessive bending, and no climbing. (Tr. 144). He opined that claimant "was continuously disabled from 9/86 to 10/87."

On September 18, 1987, Dr. Kramer reported that claimant was still unable to rise up on his toes and had a flat-footed gait. (Tr. 142). His eversion was strong. He had no difficulty with bowel movements.

On March 11, 1988, Dr. Kramer reported that claimant's calf strength was still not normal bilaterally. (Tr. 141). His chief problem appeared to be "an emotional one." Dr. Kramer recommended counseling and continuing exercise, which claimant did not appear to be keeping up with at that time.

On November 22, 1988, Dr. Kramer reported that claimant did not regain significant amounts of plantar flexion at the ankle. (Tr. 140). However, he noted that claimant was working full-time and doing relatively well.

On June 20, 1989, claimant's plantar flexion strength had not improved, although he had not undergone physical therapy in a long time. (Tr. 139). He had been working without difficulty. Dr. Kramer noted that claimant appeared to be developing some degree of calcaneal cavus, which might require a foot procedure in the future.

On December 13, 1989, Dr. Kramer performed a triple arthrodesis bilaterally. (Tr. 131-32). X-rays taken on January 31, 1990, revealed good position and good progressive fusion. (Tr. 119).

**(2) Letter from Software Engineering of America dated February 20, 2003**.

Claimant's uncle, Salvatore Simcone, President and CEO of Software Engineering of America, wrote that claimant had worked in the mail room where he could sit in one spot and fill envelopes for mailers. (Tr. 181). He noted that claimant was not able to work for sustained periods, and "was by and large disabled." He stated that they felt that claimant's having something to do "would ease his depression and give him a sense of contributing."

**(3) Claimant's Administrative Hearing Testimony**. At the hearing on October 10, 2002, claimant was unrepresented. (Tr. 200). The following colloquy transpired between the ALJ and claimant regarding claimant's right to counsel:

> ALJ: On the Notice of Hearing we sent you, we told you had a right to an attorney or representative if you wanted one. You've come here by yourself. Do you feel you can tell me what you want to tell me without the aid of a representative?

> CLMT: Yes, sir.

(Tr. 200).

Claimant testified that he was 36 years old. (Tr. 201). He stated that he was 5 feet 6 inches tall and weighed 140 pounds. (Tr. 202). He reported that he had gained about 20 pounds.

Claimant stated that he had graduated from high school in special education. (Tr. 203). He said that he had stopped working after he broke his back in 1986. He reported that he had worked at his uncle's software company in New York in 1988, and stopped in December of 1989. (Tr. 203-05). He testified that he had stopped working because he had trouble with his feet. (Tr. 206-07). He stated that he had tried working at Country Mart in Lafayette, but that it "was too much." (Tr. 207).

Claimant reported that he was still having severe back pain and foot problems. He stated that he was taking Lortab for pain. He testified that he drove only when necessary. (Tr. 202).

**(4) The ALJ's Findings**. Claimant argues that: (1) the ALJ erred in failing to find him disabled for the period from September 1, 1986 through December 6, 1989, in light of the treating physician's opinion or, alternatively, the ALJ's RFC assessment was erroneous and his reliance on the Medical-Vocational Guidelines to find claimant not disabled was improper, and (2) the ALJ erred in finding that claimant had engaged in substantial gainful activity in 1988 and 1989. Because I agree that the ALJ failed to accord proper weight to the treating physician's opinion, I recommend that this case be **REVERSED,** and the claimant awarded appropriate benefits from September 1, 1986 to October 31, 1987.

As to the first argument, Dr. Kramer opined on September 18, 1987, that claimant was capable of working full-time with no heavy lifting, no excessive bending, and no climbing. (Tr. 144). He further found that claimant "was continuously disabled from 9/86 to 10/87." There are no other medical records to refute this finding.

In rejecting Dr. Kramer's finding that claimant was disabled from September, 1986 to October, 1987, the ALJ found that this opinion was inconsistent with Dr. Kramer's own progress notes. (Tr. 20). Specifically, the ALJ noted that less than a year after the accident, Dr. Kramer had observed that claimant's strength was continuing to improve with physical therapy. (Tr. 147). He also cited Dr. Kramer's progress note dated September 18, 1987, which indicated that claimant was still unable to raise up on his toes and had a flat-footed gait, but continued in physical therapy. (Tr. 142). However, neither of these reports show that claimant was capable of working at those times.

It is well established that the opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d

871 (1995). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Newton,* 209 F.3d at 455 (citing 20 C.F.R. § 404.1527(d)(2)). Good cause for abandoning the treating physician rule includes disregarding statements by the treating physician that are brief and conclusory, not supported by medically accepted clinical laboratory diagnostic techniques, or otherwise unsupported by evidence. *Leggett*, 67 F.3d at 566; *Greenspan*, 38 F.3d at 237.

Claimant argues that the ALJ failed to present contradictory evidence for rejecting Dr. Kramer's opinion, citing *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). *Loza* held that "[m]edical evidence must support a physician's diagnosis, but if it does "[t]he expert opinion[ ] of a treating physician as to the existence of a disability [is] binding on the fact-finder *unless contradicted by substantial evidence to the contrary.*" (emphasis added). *Id*. at 393 (citing *Bastien v. Califano,* 572 F.2d 908, 912 (2nd Cir. 1978) and 20 C.F.R. § 404.1527(d)(2). In this case, the ALJ cited no contradictory evidence for rejecting Dr. Kramer's opinion that claimant was disabled from September, 1986 to October, 1987.

Additionally, the Fifth Circuit has held that "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." (emphasis in original). *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). In *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001), the court held that an ALJ must consider the following factors before declining to give any weight to the opinions of a treating doctor: length of treatment, frequency of examination, nature and extent of relationship, support provided by other evidence, consistency of opinion with record, and specialization. *Id.* at 621 (citing *Newton,* 209 F.3d at 456). The ALJ did not consider those factors in this case, which constitutes error.

Claimant's treating physician determined that claimant was disabled from September, 1986 to October, 1987. (Tr. 144). After that point, he found that claimant could work full-time, with limitations to no heavy lifting, no excessive bending, and no climbing. The record reflects that claimant worked in 1988 and 1989, earning over $17,000 and $16,000, respectively. (Tr. 71, 203). Under the Social Security Regulations, this constitutes substantial gainful activity. 20 C.F.R. §404.1574(b)(2). Based on Dr. Kramer's report of September, 1987 and claimant's subsequent

earnings, claimant was not disabled after October, 1987.

Because the ALJ erred in rejecting the treating physician's finding that claimant was disabled from , the undersigned recommends that the Commissioner's decision be **REVERSED**, and that the claimant be awarded appropriate benefits for the period of September 1, 1986, which is the alleged onset date,[3] through October 31, 1987.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE**

---

[3]The application for disability benefits is not in the record. The ALJ designated March 1, 1987 as the alleged onset date. (Tr. 17). However, the Disability Report Adult, as well as Dr. Kramer's reports, lists the onset date as September 1, 1986. (Tr. 97, 144). Accordingly, the undersigned is using September 1, 1986 as the onset date.

**TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed January 9, 2006, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE